NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

LORETTA TUTEIN, ROBERT TUTEIN,
JAMES THOMAS, JEANINE THOMAS,
DANDRIDGE HENRY, DEROY JEREMIAH,
EVANNIE JEREMIAH, JOAQUIN
MERCADO, LISEL MERCADO, CARLTON
GREENE, FRANCIS DANIEL, ROSE
DANIEL, and CAROLYN JOSEPH,

    Plaintiff,

v.

INSITE TOWERS, LLC

    Defendant.

Civ. No. 12-71

**OPINION**

THOMPSON, U.S.D.J.[1]

## **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant InSite Towers, LLC ("Defendant") (ECF No. 94) and the Motion for Leave to File a Second Amended Complaint by Plaintiffs Loretta Tutein, Robert Tutein, James Thomas, Jeanine Thomas, Dandridge Henry, Deroy Jeremiah, Evannie Jeremiah, Joaquin Mercado, Lisel Mercado, Carlton Greene, Francis Daniel, Rose Daniel, and Carolyn Joseph[2] (collectively, "Plaintiffs") (ECF No. 117). The Court has decided these Motions based on the written submissions of the parties and

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.
[2] Plaintiff Carolyn Joseph wishes to withdraw. (11/21/18 Letter from Pls., ECF No. 131.) The parties have yet to seek a stipulation withdrawing her. Dandridge Henry and Joaquin Mercado are deceased, and whether their estates will substitute for them as parties has not yet been determined. (12/03/18 Letter from Pls., ECF No. 138.)

1

without oral argument, pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion to Dismiss is granted as to Counts IV, V, VI, and VII[3] and denied as to Count III, and the Motion for Leave to File a Second Amended Complaint is denied without prejudice.

## BACKGROUND

Plaintiffs are landowners in Mt. Pleasant, St. Croix, U.S. Virgin Islands. (First Am. Compl. ¶¶ 11–27, ECF No. 10-2.) Defendant applied for and received an Earth Change Permit and a Building Permit to construct a wireless cell tower and site near Plaintiffs' property. (*Id.* ¶¶ 28, 32–35.) The tower appears to be at least seventy-five feet high and lies less than one hundred feet from the homes and property lines of several Plaintiffs. (*Id.* ¶¶ 44–45.) Construction has begun on the site. (*Id.* ¶¶ 37–38.)

According to Plaintiffs, the approval of and construction on this site runs afoul of several Rules and Regulations issued by the U.S. Virgin Islands Department of Planning and Natural Resources ("DPNR"). (*Id.* ¶¶ 47–67; *see also* Rules & Regulations, First Am. Compl. Ex. 1, ECF No. 10-3.) The minimum distance from any wireless support structure to any property line must be at least equal to the height of the tower. (Rules & Regulations § 312(b)-5(a)(3).) The Commissioner of DPNR must ensure that the wireless support structure does not unreasonably impair the peaceful enjoyment of neighboring properties, considering the "level of noise, degree of fumes, odors, activity, and intensity of glare." (§ 312(b)-5(a)(8).) After approving an application, DPNR must hold a public hearing and provide notice of the hearing. (§ 312(b)-8.) The applicant must also host an informational meeting and provide notice of the meeting. (§ 312(b)-9.) According to Plaintiffs, Defendant and DPNR violated these Rules and Regulations.

---

[3] The First Amended Complaint mislabels Count VII as "Count IV." (ECF No. 10-2.)

2

(First Am. Compl. ¶¶ 62–67.) Additionally, Plaintiffs claim that the site violates zoning laws. (*Id*. ¶¶ 68–72.)

Plaintiffs have suffered a series of harms as a result of this project. The construction itself has led to dirt and soil becoming windborne, preventing Plaintiffs from opening their windows, as well as disruptive traffic. (*Id*. ¶¶ 74–75, 80.) The tower itself is an eyesore, produces anxiety and frustration among Plaintiffs, creates concerns about exposure to radiation, and changes the essential residential character of the neighborhood. (*Id*. ¶¶ 81, 88, 90.) For Loretta and Robert Tutein, the tower creates glares and shadows and is immediately visible when they leave their home. (*Id*. ¶¶ 76–77.) The tower's presence causes stress to Loretta Tutein, which is exacerbated by her pre-existing diabetic condition and eye condition. (*Id*. ¶¶ 78–79.) The site will also lead to various harms in the future: The tower is expected to make a humming sound; light fixtures will be installed and disrupt Plaintiffs' sleep; the tower may fall and block road access; and the tower may pose an attractive nuisance for children. (*Id*. ¶¶ 82–87, 90.)

Plaintiffs filed suit against Defendant in the Superior Court of the Virgin Islands on June 15, 2012. (Notice Rmv'l ¶ 1, ECF No. 1; Compl. at 1, ECF No. 1-1.) On July 13, 2012, Defendant removed to this Court. (ECF No. 1.) On August 10, 2012, Plaintiffs amended the Complaint, adding DPNR as a co-defendant. (ECF No. 10.) In all, the Amended Complaint alleges violations of procedural due process (Count I) and substantive due process (Count II) against DPNR (*id*. ¶¶ 92–103); and private nuisance (Count III), public nuisance (Count IV), negligent infliction of emotional distress (Count V), intentional infliction of emotional distress (Count VI), and negligence per se (Count VII) against both Defendant and DPNR (*id*. ¶¶ 104–27).

On August 24, 2012, Defendant and DPNR moved to dismiss, based on a number of legal

3

theories. (ECF Nos. 12–13.) On August 16, 2013, the Court granted the Motion and dismissed the case in its entirety because Plaintiffs failed to exhaust their administrative remedies through the Board of Land Use Appeals ("BLUA"). (ECF Nos. 72–73.) The Court of Appeals for the Third Circuit affirmed the Court's dismissal of DPNR, but reversed and remanded as to its dismissal of Defendant. (ECF No. 79.)

Defendant then filed the present Motion to Dismiss on February 9, 2015. (ECF No. 94.) Plaintiffs opposed on June 26, 2015 (ECF No. 114), and Defendant replied on July 10, 2015 (ECF No. 116). On October 29, 2015, Plaintiffs filed the present Motion for Leave to File a Second Amended Complaint. (ECF No. 117.) Defendant opposed that Motion on October 23, 2015 (ECF No. 121); no reply brief was filed.

Meanwhile, Plaintiffs filed an appeal with BLUA on August 21, 2014. (ECF No. 95-1.) The case was reassigned to the Honorable Anne E. Thompson on November 6, 2018. (ECF No. 126.) On November 21 and December 3, 2018, Plaintiffs' counsel advised the Court as to which Plaintiffs are still willing and available to prosecute this case. (ECF Nos. 131, 138.) On November 26 and 27, 2018, the parties submitted additional briefing on the question of whether DPNR could be added once again as a defendant. (ECF Nos. 134–35.) The Motion to Dismiss and the Motion for Leave to File a Second Amended Complaint are presently before the Court.[4]

## LEGAL STANDARDS

### I. Dismissal for Lack of Ripeness

A challenge to the ripeness of a complaint is a challenge to the Court's subject matter jurisdiction. *See, e.g.*, *Constitution Party of Pa. v. Cortes*, 433 F. App'x 89, 92 (3d Cir. 2011);

---

[4] Additionally, Defendant filed a Motion for a Ruling on February 22, 2017, asking the Court to rule on its pending Motion to Dismiss. (ECF No. 125.) Because the underlying Motion to Dismiss is now decided, the Motion for a Ruling is dismissed as moot.

4

*NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). Under Rule 12(b)(1) of the Federal Rule of Civil Procedure, a Defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891).

## II. Dismissal for Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must

be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Defendants seek to dismiss the complaint on three grounds: (1) Plaintiffs have appealed to BLUA, so this case is not ripe; (2) Plaintiffs' common law claims are preempted by the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. § 332(c)(7)(B)(iv); and (3) Plaintiffs have failed to plead facts sufficient to state a claim on each Count. (Mem. in Supp. of Mot. Dismiss, ECF No. 95.)

### I. The Case is Ripe for Review, Despite Plaintiffs' Appeal to BLUA

According to Defendant, Plaintiffs' common law claims are not ripe for review because Plaintiffs have appealed to BLUA, and BLUA's final decision could moot Plaintiffs' claims before this Court or create findings contradictory to what is decided in this case.

The doctrine of ripeness is fundamentally a doctrine about concreteness. A case becomes ripe when a cognizable harm actually occurs, not when there is a hypothetical possibility that harm will occur. *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) ("Ripeness prevents courts from 'entangling themselves in abstract disagreements.'" (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967))); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) ("The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."). In a case like this, where an agency's decision might implicate the outcome of a case before a court:

> The ripeness doctrine prevents judicial interference "until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." The finality rule is designed to enforce this requirement, not to require the exhaustion of administrative remedies. Thus, the finality rule allows a suit whenever a "decision maker has arrived at a definitive position on the issue *that inflicts an actual, concrete injury*."

6

*Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 575 (3d Cir. 2003) (emphasis added) (internal citations omitted).[5] Here, taking the Amended Complaint as true, an actual, concrete injury has occurred. Construction has begun on a tower site that Plaintiffs claim is currently causing them harm in numerous ways. This case is therefore ripe, despite the fact that Plaintiff also seeks relief before BLUA.

## II.     TCA Preemption Does Not Impede Plaintiffs' Ability to State a Claim

47 U.S.C. § 332(c)(7)(B)(iv) provides that "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." Allowing challenges to the placement of wireless service facilities based on common law causes of action would constitute state and local regulation of these facilities; moreover, allowing such challenges would conflict with the statute's purpose of providing uniform federal regulation of the effects of radio frequency emissions. For this reason, any of Plaintiffs' common law claims based on radio frequency radiation are preempted by the TCA.

Defendant attempts to take this a step further, arguing that because it is difficult to untangle the preempted pieces of the Amended Complaint from the non-preempted parts, the

---

[5] It is true that a challenge to a local government's land use decision is not ripe "unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290–91 (3d Cir. 1993) (summarizing several cases); *see also Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214, 217 (3d Cir. 2009). This is nothing more than a specific application of the general principal that actual harm must occur before a case is ripe, and a recognition that in most zoning and land use cases, "a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner." *Taylor Inv.*, 983 F.2d at 1291.

7

entire Amended Complaint should be dismissed. But this untangling is not nearly so daunting. Plaintiffs have alleged several types of harm, most of which have nothing to do with radiation, and it is not difficult to ignore the radiation-based claims while preserving the others. Therefore, TCA preemption is not a reason to dismiss the Complaint. However, Plaintiffs are advised to exclude all references to radio frequency radiation in any future amended complaint they file.

**III.     Plaintiffs Fail to State a Claim for All Counts Except for Private Nuisance**

Defendant also challenges whether Plaintiffs plead facts sufficient to state a claim for each of their five common law Counts. The Court addresses each Count in turn.

    A.     *Plaintiffs State a Claim for Private Nuisance*

28 V.I.C. § 331 states that, "Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor [and may also obtain injunctive relief]." "Private nuisance" is not defined by statute, but Virgin Islands courts have applied the Restatement (Second) of Torts to determine whether a nuisance has occurred. *Bermudez v. V.I. Tel. Corp.*, 54 V.I. 174, 185, 192 (Super Ct. 2011); *Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 403–04 (Super. Ct. 2015).

The Restatement defines private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land," and requires a private nuisance to cause "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." Restatement (Second) of Torts §§ 821D, 821F (Am. Law Inst. Nov. 2018 update). Because "significant harm" is required, "slight inconvenience or petty annoyance" is insufficient. § 821F cmt. c. And because the harm must be of the kind that would be suffered by a normal person, an individual's hypersensitivity cannot give rise to a nuisance claim. § 821F cmt. d. Finally, a private nuisance must be either intentional

8

and unreasonable; or unintentional but negligent, reckless, or abnormally dangerous. § 822. In the Virgin Islands, noise, *Bermudez*, 54 V.I. at 193–94; *Boyd v. Latalladi*, 8 V.I. 173, 178–79 (Mun. Ct. 1971), ethanol emissions, *Alleyne*, 63 V.I. at 406, and vibrations caused by construction, *Cifre v. Daas Enters., Inc.*, 62 V.I. 338, 363 (Super. Ct. 2015), have all been deemed nuisances.

In this case, Plaintiffs allege that construction of the tower has led to airborne dirt and soil, preventing Plaintiffs from opening their windows. (First Am. Compl. ¶¶ 74–75.) This constitutes a significant harm to Plaintiffs' enjoyment of their property, and so is sufficient to state a claim for private nuisance. However, other of Plaintiffs' allegations fail to state a claim, in particular those that rely on a person's hypersensitivity (*id.* ¶¶ 78–79), those that raise concerns about radiation and so are preempted by the TCA (*id.* ¶ 81), and those that are at this point speculative (*id.* ¶¶ 86, 90e).

Because some of the facts contained in the Amended Complaint, if taken as true, constitute private nuisance, Plaintiffs have stated a claim on this Count.

### B. *Plaintiffs Fail to State a Claim for Public Nuisance*

Virgin Islands courts follow the Restatement view of public nuisance. *Bell v. Radcliffe*, 2015 WL 5773561, at *8–9 (V.I. Super. Ct. Apr. 30, 2015). The Restatement defines public nuisance as "unreasonable interference with a right common to the general public." § 821B(1). "A public right is one common to all members of the general public." § 821B cmt. g.

> Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. . . . It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large.

*Id.* Additionally, a plaintiff bringing a public nuisance claim "must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the

9

general public that was the subject of interference." § 821C(1).

Here, Plaintiffs have failed to specify any public right with which Defendant has interfered. Instead, the Amended Complaint states summarily that Defendant "interfered with the public health, safety, peace and general welfare" of Plaintiffs and others. (¶ 110.) This is "no more than [a] conclusion[]" that must be ignored on a motion to dismiss. *Iqbal*, 556 U.S. at 679. And while Plaintiffs allege a series of harms that they themselves have suffered, they have not shown how the harms they have suffered are of a different kind than those that have been foisted upon the general public. Plaintiffs therefore have failed to state a claim for public nuisance.

    C.    *Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress*

The Virgin Islands follows the Restatement position on negligent infliction of emotional distress. *Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004); *Berrios v. HOVIC*, 2010 WL 3069480, at *8–9 (D.V.I. July 29, 2010). According to the Restatement:

> If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>     (a) should have realized that his conduct involved an unreasonable risk of causing the distress, . . . and
>     (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

§ 313(1). To successfully plead negligent infliction of emotional distress, then, Plaintiffs must show a foreseeable risk of causing physical injury. The Amended Complaint contains no such factual showing. Rather, it contains only the conclusory statement that "[i]t was reasonably foreseeable that the Defendants' actions would result in injury to the [Plaintiffs]." (First Am. Compl. ¶ 118.) And while the Amended Complaint does allege physical harm caused to Loretta Tutein (*id.* ¶ 78), it acknowledges that these physical symptoms coexisted with preexisting medical conditions (*id.* ¶ 79) and so fails to demonstrate how these harms were foreseeable. Plaintiffs have therefore failed to state a claim for negligent infliction of emotional distress.

10

D.  *Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress*

The Virgin Islands, following the Restatement, *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 231 (3d Cir. 2004), defines intentional infliction of emotional distress as "by extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another," Restatement § 46(1). "Extreme and outrageous conduct" is a "high bar to meet." *Liburd v. Gov't of the V.I.*, 2013 WL 960780, at *11 (D.V.I. Mar. 13, 2013) (quoting *Glasgow v. Veolia Water N. Am. Operating Servs. LLC*, 2010 WL 3780966, at *8 (D.V.I. Sept. 21, 2010)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement § 46 cmt. d.

The allegations contained in the Amended Complaint come nowhere near the kind of extreme and outrageous conduct that must be proven to demonstrate intentional infliction of emotional distress. Though Defendant's action may have been wrong, and may even have subjected it to legal liability, it did not exceed the bounds of decency or tolerability in a civilized community. Plaintiffs therefore fail to state a claim for intentional infliction of emotional distress.

E.  *Plaintiffs Fail to State a Claim for Negligence Per Se*

Virgin Islands courts apply the Restatement to the tort of negligence per se. *Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 14–15 (Super. Ct. 2008); *Constable v. Kmart Corp.*, 2000 WL 36724497, at *5 (V.I. Terr. Ct. July 26, 2000). Under the Restatement (Second) of Torts, a defendant may be negligent where she violates a statute or regulation whose purpose was to protect the interests of the class of persons harmed from the type of harm that occurred. § 286. As the Restatement (Third) of Torts succinctly describes, "An actor is negligent if, without

11

excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." § 14 (Am. Law Inst. Oct. 2018 update).

Plaintiffs allege that Defendant violated several DPNR Rules and Regulations. Those Rules and Regulations have as an explicit purpose "promot[ing] the public health, safety, and general welfare of residents and business of the U.S. Virgin Islands." (Rules & Regulations § 312(b)-1(a)(2).) In other words, they seek to protect people like Plaintiffs. [6] So, if Plaintiffs can show that Defendant violated the Rules and Regulations, they can establish a claim of negligence per se.

However, the Complaint does not demonstrate that Defendant violated the Rules and Regulations, and so it cannot support a finding of negligence per se. First, several of the Rules and Regulations impose duties on DPNR rather than on Defendant. They require that the Commissioner of DPNR determine that the wireless support structure does not unreasonably impair the peaceful enjoyment of neighboring properties (*id.* § 312(b)-5(a)(8)), and that DPNR hold a public hearing (*id.* § 312(b)-8). These Rules and Regulations do not require anything of Defendant.

Second, Plaintiffs have failed to allege a violation of some of the Rules and Regulations they cite. In particular, a wireless support structure may be no closer to a property line than its height (*id.* § 312(b)-5(a)(3)), but Plaintiffs have alleged facts showing only that the tower appears to be at least seventy-five feet high and that it is less than 100 feet from the property line

---

[6] The Rules and Regulations also contain other purposes, including "promoting a wireless infrastructure to accommodate the wireless service needs of residents and businesses of the U.S. Virgin Islands." (Rules & Regulations § 312(b)-1(a)(2).) But this does not detract from the fact that the Rules and Regulations were enacted in part to protect the interests of residents such as Plaintiffs.

of any Plaintiff (First Am. Compl. ¶¶ 44–45). The Rules and Regulations also require that applicants host an informational meeting "[u]pon receipt of a completed application and all required documentation for an alternative tower structure that is less than 60 feet in height, DAS [Distributed Antenna Systems], and a proposed temporary facility to be utilized while a permanent facility is being constructed." (Rules & Regulations § 312(b)-9(a).) But the cell site in question is taller than sixty feet (First Am. Compl ¶ 44), is not DAS (*compare* Rules & Regulations § 312(b)-2(m) (defining DAS), *with* § 312(b)-2(gg) (defining "Wireless support structure," which describes the project in question)), and is not a temporary facility. Thus, Defendant was not required to host an informational meeting.[7]

Because the Amended Complaint fails to identify any instance where Defendant violated the Rules and Regulations, the claim of negligence per se must be dismissed.

## IV. Plaintiffs' Proposed Second Amended Complaint Would Not Survive a Motion to Dismiss

Plaintiffs seek leave to amend the First Amended Complaint. The Second Amended Complaint would (1) remove the already-dismissed substantive due process claim against DPNR; (2) reassert claims against DPNR by showing that administrative remedies have been exhausted; and (3) add a new defendant, Genevieve Kelsick, who owns the land underlying the construction site. (Mot. Leave to File Second Am. Compl. at 1–2; Redlined Proposed Second Am. Compl., ECF No. 117-2.)

---

[7] Plaintiffs also allege that the construction violates zoning laws because the construction site is in an R-2 zone. (First Am. Compl. ¶¶ 68–72.) But the R-2 zone allows "Wireless Facilities and Wireless Support Structures" "subject to rules and regulations promulgated under chapter 5 of this title [29 V.I.C. § 294a]." 29 V.I.C. § 228. Plaintiffs' claim is therefore duplicative of their claim that Defendant violated DPNR Rules and Regulations.

13

Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "In the absence of substantial or undue prejudice to the nonmoving party . . . 'denial [of leave to amend] must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.'" *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993)). Amendment would be futile where the amended complaint would fail to survive a motion to dismiss for failure to state a claim, *Alvin*, 227 F.3d at 121, including where a claim would be barred by the statute of limitations, *Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003) (citing *Riley v. Taylor*, 62 F.3d 86, 92 (3d Cir. 1995)).

Here, the Second Amended Complaint proposed by Plaintiffs would not fare any better upon a motion to dismiss than the present complaint. First, it fails to repair the deficiencies identified above, and so all Counts dismissed here would be dismissed once again. Second, the claims Plaintiffs seek to assert against DPNR would be dismissed for failure to exhaust administrative remedies.[8] Third, its new claims against Kelsick would be barred by the statute of

---

[8] The Court has already ruled (ECF Nos. 72–73), and the Third Circuit has affirmed (ECF No. 79), that Plaintiffs failed to exhaust administrative remedies. But Plaintiffs now argue that exhaustion of administrative remedies would be futile. A BLUA appeal must be filed "within thirty (30) days after receipt of the order or ruling complained of." 29 V.I.C. § 295(a). The DPNR permits that Plaintiffs challenge were issued in January 2012, but Plaintiffs did not learn of these permits until April 2012. So, argue Plaintiffs, any appeal they could have filed after learning of the permits would have been untimely. However, the text of the statute begins the thirty-day window upon "receipt" of the permit, arguably giving Plaintiffs thirty days from the day they discovered the permits in April. Additionally, it is plausible that BLUA would have recognized equitable tolling with regards to this deadline. Plaintiffs therefore have not made the "clear and positive" showing of futility required to overcome the requirement of administrative exhaustion. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).

14

limitations.[9] Allowing the Second Amended Complaint in its currently-proposed form would therefore be futile.

That being said, Plaintiffs could conceivably file a different amended complaint that would ameliorate the deficiencies identified in this Opinion and survive a motion to dismiss. For this reason, although Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied, Plaintiffs will be given sixteen days to file a different amended complaint than the one they had proposed.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted as to Counts IV, V, VI, and VII and denied as to Count III, and Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied without prejudice. An appropriate Order will follow.

Date: 12/17/2018                 /s/ Anne E. Thompson
                                 ANNE E. THOMPSON, U.S.D.J.

---

[9] The relevant statute of limitations is two years. 5 V.I.C. § 31(5)(A). The claims asserted ripened around 2012, well more than two years ago. And the new complaint would not relate back to the filing date of the original complaint because there was no "mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).